# BOSTON RUBBER SHOE COMPANY *v.* ABRAMOWITZ.

---

TRADEMARKS; SIMILARITY OF WORDS.

Prior use by a party of the word "Hub" as a trademark for rubber boots and shoes requires denial of registration by another party of the same word as a trademark for leather shoes; the question being, not whether rubber and leather goods should be separately classified, but whether the marks of the parties are so similar as to tend to create confusion in trade when used on footwear generally, or on particular grades of footwear. Whether the prior user is entitled to registration of the word as a trademark for boots and shoes having canvas uppers and leather and rubber soles, not decided.

No. 1123.   Patent Appeals.   Submitted November 15, 1917.   Decided December 3, 1917.

HEARING on an appeal from a decision of the Commissioner of Patents denying registration of a word as a trademark.
                                            *Reversed.*

The facts are stated in the opinion.

*Mr. E. W. Vaill, Mr. Ernest Hopkinson,* and *Mr. Clarence O. McKay* for the appellant.

*Mr. Isidor E. Schlesinger* for the appellee.

Mr. Justice Van Orsdel delivered the opinion of the Court:

This appeal is from the decision of the Commissioner of Patents in a trademark interference.

The Boston Rubber Shoe Company filed an application on September 17, 1915, for the registration of the word "Hub" as a trademark for "boots and shoes having canvas uppers and leather and rubber soles." Joseph Abramowitz applied on June 25, 1915, for the registration of the words, "the Hub," together with a picture of a hub, as a trademark for "leather shoes." The Boston company secured registration of its mark on June 4, 1912, for use on "rubber boots and shoes." Abramowitz has used his mark since 1914.

The Commissioner held that there was no interference in fact, and that the "Boston company, having failed to show use of its mark on shoes of the character it specifies, is not entitled to register." He further held that, in the absence of any interference, "the filing papers of Abramowitz are sufficient to support his case."

The theory upon which this finding is based is expressed in the opinion of the Commissioner, as follows: "There is no evidence that the Boston company ever used the mark in either form on any leather shoes. Its mark is a mark for rubber goods. The very fact that for over thirty years the mark has been used on rubber goods would argue against its association with leather shoes, which are an entirely different class of goods, made by totally different processes. The testimony as to use of the mark in 1910 on tennis shoes is not material merely because these shoes had leather insoles. The testimony that the mark was used on lumbermen's rubber shoes with leather tops not only fails to state a date, but would not be material if it did; for such shoes are not leather shoes."

The error into which the Patent Office has fallen is in a rigid adherence to the separate classification of rubber and leather goods. The particular subject-matter of this interference is whether or not the marks of the contending parties are so similar as to create confusion in trade when used on footwear generally or on particular grades of footwear. The use of leather

and rubber, and partly leather and partly rubber, footwear is so general and so interrelated in use by the public that the purchaser should not be called upon to discriminate between the goods put out by one of two users of the same mark. The marks in question are the same, and we are disposed to hold that they are used upon goods of the same descriptive qualities within the provisions of the trademark law. That their use would be likely to lead to confusion in trade, we have no doubt.

The prior registration and use of the Boston company's mark on particular kinds of footwear would entitle it to extend its use to other kinds of goods within the same particular classification, and give it sufficient standing to contest the right of Abramowitz to registration. It is unnecessary for us to consider the question of the right of the Boston company to have its mark registered for "boots and shoes having canvas uppers and leather and rubber soles," since its prior use on particular kinds of footwear is sufficient to forbid the registration of the Abramowitz mark for footwear generally or for particular grades thereof.

The field of selection of an arbitrary mark is sufficiently broad to enable Abramowitz to select a mark which will have no tendency to conflict with the mark of the Boston company. To impose this duty is only consonant with a due regard for the restrictions which the law has placed upon the selection of trademarks sought to be registered. Public security is the first consideration, and the courts should diligently seek to construe the law to that end.

We are of opinion that Abramowitz is not entitled to have his mark registered. The question of the right of the Boston Rubber Shoe Company to have its mark registered is left open for the further consideration of the Commissioner of Patents in the light of this opinion. With this qualification, the decision of the Commissioner is reversed, and the clerk is directed to certify these proceedings as by law required.     *Reversed.*